Filed 12/26/13  In re Robert L. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ROBERT L., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ROBERT L.,<br><br>    Defendant and Appellant. | G048032<br><br>(Super. Ct. No. DL043942)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Cheryl L. Leininger, Judge.  Affirmed.

Renee Paradis, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

After a contested jurisdictional hearing, the juvenile court upheld a petition alleging appellant Robert L. had committed four offenses: aggravated assault (Pen. Code, § 245, subd. (a)(4)); false imprisonment by violence, menace, deceit, or fraud (Pen. Code, § 236); domestic violence battery (Pen. Code, § 243, subd. (3)(1)); and damaging a wireless device to prevent report of a crime (Pen. Code, § 591.5). A vandalism charge was found not to be true.

The court found the first two charges to be felonies, and computed appellant's maximum exposure to custody at five years, three months. The court declared appellant a ward of the court, placed him on supervised probation, and required, inter alia, that he serve 127 days in juvenile custody. Robert timely filed a notice of appeal.

We appointed counsel to represent him on that appeal. Counsel filed a brief which set forth the facts of the case. Counsel did not argue against his client, but advised the trial court he could find no issues to argue on appellant's behalf. Appellant was invited to express his own objections to the proceedings against him, but did not. Under the law, this put the onus on us to review the record and see if *we* could find any issues that might result in some kind of amelioration of appellant's lot. (*People v. Wende* (1979) 25 Cal.3d 436.) It should be emphasized that our search was not for issues upon which appellant *would* prevail, but only issues upon which he *might possibly* prevail.

We have examined the record and found no arguable issue. This is not surprising. In fact, it is what we find in the vast majority of cases in which appellate counsel files a *Wende* brief. Even the most cynical observer of the appellate system would have to recognize that appellate counsel has a financial incentive for finding issues. The simple matter is counsel makes more money if he/she finds an issue that is arguable than if he/she does not. So while it sometimes happens that an appellate court will find issues after appellate counsel has thrown in the towel, it is unusual.

2

This case is not unusual – at least not in any way that would benefit appellant. It is somewhat unusual in that counsel has provided us with a lengthy list of case citations and statutory references to evaluate, and a detailed statement of facts. We have adopted that statement of facts as background for our opinion and it is reproduced below; we have examined the issues suggested by the cases and statutes cited and find nothing arguable.

FACTS

"Only two witnesses testified at the hearing: the alleged victim of the offenses, appellant's girlfriend, Veronica Ponce,[1] and a responding officer, Salvador Lopez. Lopez testified both to events he witnessed and prior inconsistent statements that he asserted Ponce had made at the time he reported to the scene.

"Ponce testified that she and Robert L., the minor, had been dating for approximately two and a half years at the time of the incident. She and Robert have an infant child together. Robert lives with his parents at an apartment in Santa Ana on North Harbor Boulevard. On December 29th, Ponce spent the day at Robert's house, where the two of them got into a fight. Ponce described the origin of the fight as Robert being mad because he had woken up in a bad mood. Robert's parents had left the apartment when, at around one or two in the afternoon, Ponce took a walk outside and Robert followed her. They were arguing and Robert was yelling a little bit. At some point, Robert took her phone, put it on the ground, and stepped on it. There was no damage to the phone. Robert told her to go back to the apartment and get her stuff and leave. She went into the bedroom that she and Robert occupied. Ponce began to pack her and her child's things into her duffle bag; after about two minutes, Robert came in and closed the open door behind him, but did not lock it. Ponce felt afraid at this point because she couldn't get out of the room, because he was standing behind her angrily. Robert began to call her

_____

[1] Ponce was eighteen at the time of the incident.

3

names and Ponce ignored him.  He pushed Ponce 'pretty hard' and she fell over the edge of the bed, hitting her head on his football helmet, which was on the floor of the room. Ponce got up and Robert pushed her back onto the bed.  At some point in this sequence, he head-butted her and bit her lower lip.  At a later point, Ponce was on the floor and Robert started to pull off her boots.  She began kicking at him and he backed away. Robert left the bedroom and went to the living room; Ponce got up and went into the bathroom to get away from Robert.  She locked the door and sat against it so he couldn't open the door.  Robert tried to push the door open but was only able to push open the top part.  He started pulling Ponce's hair, which made her unable to keep the door closed, at which point he entered the bathroom.  After he got inside the bathroom, he told Ponce that if she didn't call the cops, it would just get worse.  Ponce tried to hit him but he stopped her; he punched her once in [the] stomach and once in the arm and kicked her once on her upper body while they were in the bathroom.  After this encounter, Robert left the bathroom to get his phone and call the police himself.  Ponce had heard Robert's side of the conversation; at this point, the 911 call was played for the court.  In the conversation, Robert stated that he had hit his girlfriend and that she did not need a paramedic and was not hurt.  He indicated he had hit Ponce on a previous indication.  He said Ponce was lying on the ground and crying, and that she did not want to talk to the 911 operator.   When the 911 operator asked him where he had hit her, Robert said he had slapped her once in the face and pulled her hair, and done something to her stomach. After the incident, Ponce had a bruise under her lip from where Robert had bitten her, a bruise on her shoulder from where he had punched her, and redness on her forehead from the head-butt.  Ponce hadn't called the police during or after the incident because she didn't want Robert to get in trouble.

"On a previous occasion, Ponce and Robert had been driving to the movies when Robert had slapped her one time with an open hand, which she indicated was the only other time he had hit her.

4

"Salvador Lopez is an officer with the Santa Ana police department. On December 29th, he was working patrol and was dispatched around 3:20 pm to North Harbor Boulevard to respond to a domestic violence incident. When he arrived, he spoke to Robert about the incident. Robert told Lopez that he and Ponce had been arguing throughout the day after Ponce refused to cook breakfast for him that morning. At one point, Ponce had left the apartment building and Robert followed her and continued the argument. At that point, Ponce slapped Robert across the face, at which point Robert told her he wanted her to leave and she should get her things and get out of the house. She went into their bedroom; Robert followed her and closed and locked the bedroom door, because he didn't want Ponce to leave. At that point, Ponce began throwing his possessions around the bedroom. Robert began yelling at her and she yelled back. He became upset and pushed Ponce to the ground. She hit her head on his football helmet, which was on the ground. He stood over her and continued yelling. When she got up, Robert pushed her back down onto the bed. He got on top of her and slapped her across the face and head-butted her. Robert said he had felt dizzy after head-butting Ponce. He left the room at that point and Ponce locked herself in the bathroom. The top of the door was bent from a previous fight that the two had had; Robert reached through the opening the bent part of the door created and pulled Ponce's hair. Robert got into the bathroom and punched Ponce eight times in the stomach. Ponce said she was going to call the police, and got her phone out. Robert took her phone, threw it on the ground, and then stepped on the phone, still in the bathroom. Robert told Lopez they had fought in the past.

"Lopez also spoke with Ponce. She told him that when Robert had followed her into the bedroom, he had locked the door behind him and that she had felt afraid and vulnerable because she couldn't get out. She had also told Lopez that she intended to call the police while in the bathroom and that after she had told that to Robert, he grabbed her phone from her, threw it on the ground, and stepped on it."

5

## DISCUSSION

It is easy to see from this recitation of the facts – which accurately reflects the transcript of the hearing – why appellate counsel was unable to find anything to argue on appeal. There was no search, no arrest issue, and appellant essentially confessed twice: once to the 911 operator and once to the officer sent to the scene. Photos introduced at the hearing corroborated the victim's account, and Robert did not testify.

Appellate counsel conscientiously investigated several possible avenues of appeal: whether the evidence was sufficient, whether the 911 call was properly authenticated, whether appellant's shackling during the proceeding could be the foundation of an assignment of error, whether it was error to introduce evidence of the prior acts of violence toward the victim committed by Robert. None of them was fruitful. There was an abundance of evidence, the phone call was properly authenticated, shackling could hardly be argued to have prejudiced the case where there was no jury, and section 1109 of the Evidence Code rather clearly allows for introduction of evidence of prior acts of violence in a domestic violence case.

We searched for other possible issues, scrutinizing the cross-examination of the victim by Robert's counsel, and his closing arguments. He was vigorous and effective, even asserting a Welfare and Institutions Code section 701.1 motion at the close of petitioner's case, which was successful in that it resulted in the court's dismissal of the vandalism charge against appellant, but failed on the greater charges.

The evidence against appellant – largely from his own mouth – was overwhelming, and there were no rulings that involved anything but the most

6

straightforward application of the law.  Appellate counsel was correct that there were no arguable issues for her to raise.  The judgment is affirmed.

BEDSWORTH, ACTING P. J.

WE CONCUR:

MOORE, J.

ARONSON, J.